No. 88-282

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

BARRY ENGRAV,

        Plaintiff and Appellant,

  -vs-

MOREY CRAGUN, Granite County Sheriff,

        Defendant and Respondent.

APPEAL FROM: District Court of the Third Judicial District,
In and for the County of Granite,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Barry Engrav, pro se, Missoula, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Paul D. Johnson, Asst. Atty. General, Helena
        J. Allen Bradshaw, Granite County Attorney, Philips-
        burg, Montana

Submitted: Dec. 9, 1989

Decided: February 27, 1989

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Barry Engrav, proceeding pro se, appeals the order of the District Court of the Third Judicial District, Granite County, denying his request for records of the Granite County Sheriff's Department. Appellant requested records of the daily log of phone calls, case files of criminal investigations, pre-employment investigations, and lists of arrested persons. The sheriff's office denied the request, and the District Court upheld the sheriff's denial, finding that the right of privacy of those people on the requested lists and investigation reports held a right of privacy which outweighed the public right to know.

The issue on appeal is:

Whether the District Court properly denied the plaintiff access to the requested information on the grounds that the right of privacy of the individuals outweighed the public right to know?

Appellant is a University of Montana student and a lifetime resident of Granite County who is interested in researching and reporting on various aspects of Granite County law enforcement. He requested information concerning records in the Granite County Sheriff's office. These were: (1) daily log of telephone calls, (2) case files of criminal investigations, (3) pre-employment investigation reports, and (4) a list of persons arrested since January 1, 1987.

Appellant alleged that the phone log and list of radio calls were important to determine the rate of crime reported by the public, the response of the sheriff's department to those reported crimes, and the seriousness of the reported crimes. He alleged that the case files for criminal investigations were important because:

> Without access to case files of criminal investigations, Plaintiff is unable to assess the quality of the Defendant's investigative procedures and the rate of solved crimes.

Appellant requested pre-employment investigation materials because without them he would not be able to determine the adequacy of the defendant's hiring policies or the quality of personnel hired by the defendant. He wanted to see if the policies were up to the standards that taxpaying citizens were entitled to.

Lastly, appellant wanted the list of persons arrested since January 1, 1987, to investigate the quality of care given to incarcerated inmates.

Respondent, Granite County Sheriff, denied these requests by Engrav.

The issue is whether the District Court properly denied the requests for the daily telephone logs, all criminal investigatory files, active and inactive pre-employment investigatory files, and arrest records, declaring that the right of privacy outweighed the public right to know. The Constitution of the State of Montana states two conflicting rights. Article II, Section 9, states:

> No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

Article II, Section 10, reasserts an individual's right to privacy:

> The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.

3

When reading the transcript from the Constitutional Convention for the 1972 Montana Constitution, it is clear that the framers, in wording Article II, Section 9, took painstaking care to consider both the public right to know and an individual's right of privacy. Volume VII, Mont. Const. Conv. at 2483-2498. The primary concern of the delegates to the convention was in enacting an article which gave the public the power to request information from government agencies and public bodies. The convention delegates specifically inserted the words "except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure."

> The committee intends by this provision that the right to know not be absolute. The right of individual privacy is to be fully respected in any statutory embellishment of the provision as well as in the court decisions that will interpret it. To the extent that a violation of individual privacy outweighs the public right to know, the right to know does not apply. . . .

Volume II, Mont. Const. Conv. at 632.

Delegates to the convention carefully discussed the introduction of a specific section for the right of privacy, and subsequently created Article II, Section 10. They took into consideration the fact that neither the United States Constitution nor the original Montana Constitution expressly stated a right to privacy in the bill of rights. According to the delegates, since adopting the original Montana Constitution, the right had clearly developed and should be enumerated in the Constitution.

One of the reasons that the delegates believed the right should be explicitly enumerated was that modern technology is used today to invade individual privacy, including

4

wire taps, bugging devices, photo surveillance and computerized data banks.

Appellant declares that § 2-6-102, MCA, is the standard for the public right to know. It states that "every citizen has a right to inspect and take a copy of any public writings of this state." Respondent argues that the governing statutes are within the Montana Criminal Justice Information Act of 1979, §§ 44-5-101 through 44-5-415, MCA, whose purpose is, in part, to establish effective protection of individual privacy in confidential and nonconfidential criminal justice information collection, storage, and dissemination.

In considering the possible conflict between the Articles of the Constitution and among the Montana statutes, it is important to remember that in all of the relevant laws the right of privacy for the individual is expressly regarded.

We adopted a two-part test in Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 649 P.2d 1283, which determines whether a person has constitutionally protected privacy interest. The first part of the test is whether the person involved had a subjective or actual expectation of privacy. The second is whether society is willing to recognize that expectation as reasonable. In applying the test in Montana Human Rights Division, we held that there was an individual privacy interest concerning personnel records and employment applications. In that case, the Human Rights Commission requested employment information as part of an investigation of a discrimination case. Defendant City of Billings refused to relinquish the information. We held that the Human Rights Commission could require an employer to submit certain evidence concerning employee records but that the Commission had to prevent invasion into the privacy of those people whose names appeared on the employment information. The Human Rights Commission was not to divulge any of

5

the information to outside sources. The only instance in which the Commission could do so was if it decided that a public hearing was necessary, and only then if it altered the information sufficiently to guarantee anonymity of the persons involved.

The test was also applied in Missoulian v. Board of Regents of Higher Education (1984), 207 Mont. 513, 675 P.2d 962, where the Missoulian requested information concerning job performance evaluations of the six Montana university presidents. The Board of Regents refused to submit the information, declaring that the information was within the actual expectation of the individuals' privacy rights and that the expectation was reasonable. This Court agreed with the Board. The evaluations were self-evaluations and evaluations by Board members. It was clear that if these evaluations were open to public scrutiny, none of the evaluators would be as candid as when evaluations are confidential. Moreover, the evaluations could be used as a vindictive mechanism against university employees or presidents by those who dislike the individuals.

In applying the two-part test to the case at bar, we must first decide whether the persons involved have a subjective or actual expectation of privacy. It is clear from the expectations of the individuals involved, that there is an actual expectation of privacy. It is obvious that when individuals call the police station, they have an actual expectation of privacy for the information they give. For those citizens who are willing to report crimes that they witness but wish to remain anonymous, the expectation is actual.

Public exposure of law enforcement files relating to ongoing criminal investigations would also have a disastrous effect upon law enforcement agencies in the performance of

6

their duty to protect the lives, safety and property of persons within their jurisdictions. If criminals and their allies could daily track the progress of investigations into their criminal activities, Montana would become a worldwide mecca for criminal entrepreneurs. The public policy of this state cannot permit this to occur.

There is an actual privacy interest where criminal investigations are concerned because investigations are conducted concerning people under scrutiny but are later dismissed from suspicion. Those persons do not expect to have their names publicized for something with which they have no actual involvement. Moreover, names of informants involved in criminal investigations, or undercover police officers, if made public, would put the lives of these people and the investigation in jeopardy.

The holding in <u>Montana Human Rights Division</u> established that there is an actual privacy expectation for those who apply for employment positions. They are required to disseminate information about themselves which they expect to remain private. The expectation here is actual and not subjective.

The second part of the test is whether society is willing to recognize the privacy expectation as reasonable. We hold that society does recognize the expectation.

In the case of both phone logs and criminal investigations, situations arise where the information is of a highly personal nature. These instances include cases of sexual crimes and domestic crimes where both the victims and their families should be protected from public exposure. Association with these investigations is accidental and innocent, and the privacy interests of these victims and families must be protected from further traumatic injury.

7

The appellant also requested pre-employment information. The sheriff properly denied the information requested. We have stated that where employment records are concerned,

> . . . [although] we are aware that much of the information contained in employ-ment files and records is harmless or is already a matter of general knowledge, we are not persuaded that the records are entirely free of damaging informa-tion which the individuals involved would not wish and in fact did not expect to be disclosed.

Montana Human Rights Division v. City of Billings, 649 P.2d at 1287. In Missoulian, we emphasized some of the areas which would be on pre-employment and employment files. These include family and health problems, employers' criticisms, employees' criticisms of the employer, interpersonal rela-tionships, and subjective view of employers. These must all be protected under constitutional privacy interests. More-over, if the investigations are confidential, more candidness is guaranteed the sheriff's department prior to hiring new employees. This is beneficial to the public.

Section 44-5-103, MCA, specifically declares what information can be publicly disseminated. Included in "public criminal justice information" are arrest records. Section 44-5-103(12)(e)(ii), MCA. Initial arrest records are not excluded from review by the public when reviewed in cooperation with the agency which holds the information during normal business hours of the agency. Section 44-5-301(2), MCA. Section 44-5-301(1), MCA, states that all information is public with the exception of records or index-es which are "compiled by name or universal identifier from a manual or automated system . . ." In these cases, only

information about convictions, deferred prosecutions, or deferred sentences is available to the public.

There appears to be a distinct conflict between §§ 44-5-103 and 44-5-301, MCA. Section 44-5-103(12) clearly states that arrest records are "public criminal justice information." Arrest records are included in a list of public information which includes information, (a) made public by law; (b) of court records and court proceedings; (c) of convictions, deferred sentences, and deferred prosecutions; (d) of post-conviction proceedings and status; (e) originated by a criminal justice agency, including (i) initial offense reports, (ii) initial arrest records, (iii) bail records, and (iv) daily jail occupancy rosters; (f) information considered necessary by a criminal justice agency to secure public assistance in the apprehension of a suspect; or (g) statistical information. Section 44-5-103(14), MCA, specifically states that statistical information which is disseminated in the public domain is:

> . . . data derived from records in which individuals are not identified or identification is deleted and from which neither individual identity nor any other unique characteristic that could identify an individual is ascertainable.

Although § 44-5-103 specifically regards initial arrest records as public criminal justice information, § 44-5-301(1)(a) declares:

> (1) There are no restrictions on the dissemination of public criminal justice information except for the following:
>
> (a) Whenever a record or index is compiled by name or universal identifier from a manual or automated system, only information about convictions, deferred prosecutions, or deferred sentences is available to the public.

9

It is obvious that any initial arrest record is going to be compiled by name of those arrested or by another universal identifier, such as a social security number. Therefore, under § 44-5-301, the same initial arrest records which are allegedly available to the public are also restricted from public review because they enter the area of private records of individuals.

There is debate whether the information sought concerning arrest records is more beneficial subject to public scrutiny, or whether it should not be available as public criminal justice information. Individuals arrested under suspicion of committing a crime and who are subsequently released without charges or incarceration must be protected from public persecution. On the other hand, law enforcement must be under the view of the public to deter false arrests or possible discriminatory action.

In construing statutes where general terms and specific terms are in conflict, specific intent will be given priority over the general term. City of Billings v. Smith (1971), 158 Mont. 197, 490 P.2d 221; Wymont Tractor and Equipment Co. v. Unemployment Compensation Commission of Mont. (1955), 128 Mont. 501, 278 P.2d 208. The definitional statute, § 44-5-103, specifically states that arrest records are public information. Section 44-5-301 relates to any record or index which is compiled by name or universal identifier. As to initial arrest records, § 44-5-103 takes precedent. We hold that the initial arrest records are public.

It is important to keep the right of privacy of individuals in mind here. To prevent unnecessary dissemination of private information, appellant will be allowed to view and record the information pursuant to §44-5-103(14), MCA. Section 44-5-103(14) specifically states:

10

> "Statistical information" means data derived from records in which individuals are not identified or identification is deleted and from which neither individual identity nor any other unique characteristic that could identify an individual is ascertainable.

The purpose of the information sought by appellant can be accomplished without dissemination of the names of those individuals listed on the initial arrest records. He can review and disseminate the information without including the names of arrested individuals.

Privacy rights of individuals in Montana are more substantial than the rights guaranteed in the United States Constitution. <u>Montana Human Rights Division</u>, 649 P.2d at 1286. Before this Court will invade the individual privacy of the persons involved, a compelling state interest to do so must be found. There is no compelling state interest here which allows the dissemination of the requested information. Appellant wishes to do a study for a school research project; this is not a sufficient state interest.

Section 44-5-303, MCA, states that dissemination of confidential criminal justice information is restricted to criminal justice agencies or to those authorized by law to receive it. Appellant is neither part of a criminal justice agency nor authorized to receive the information.

Section 44-5-304, MCA, allows individuals to have access to criminal history record information for the express purpose of developing statistical information pursuant to an agreement with a criminal justice agency. The information may be disseminated according to (a) specific authorization of the information; (b) limitation on the use of the information, to research, evaluative, or statistical purposes; (c) assurance of confidentiality and security of the information;

11

and (d) sanctions for violations of the agreement. Furthermore, pursuant to § 44-5-304(2), MCA, the agreements, research, studies and statistical information gathered from the criminal history records is subject to the review and approval by the Department of Justice. The requested arrest records are subject to the provisions of § 44-5-304.

We affirm the finding of the District Court and hold that the requested information is beyond the reach of the public sector. The information is protected under the Montana Constitution and the Criminal Justice Information Act of 1979.

Affirmed.

Chief Justice

We concur:

Justices

12